IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

IRVING SEYMOUR,
    Petitioner,

v.                                     Case No.   5:07cv243/RS/MD

WALTER A. MCNEIL,
    Respondent.
_____

## REPORT AND RECOMMENDATION

Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (doc. 1).  Respondent has filed a response (doc. 14) to which petitioner has replied (doc. 17).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that petitioner is not entitled to relief, and that the petition is without merit and should be denied.

## BACKGROUND AND PROCEDURAL HISTORY

On May 27, 1982, petitioner was convicted of robbery with a firearm or deadly weapon in the Circuit Court of Broward County, Florida.[1]  (Doc. 1, p. 1; Doc. 14, App.

---

[1] Petitioner committed the offense in 1981.

1, p. 17).[2] He was sentenced to 25 years imprisonment. (*Id.*). Petitioner was paroled on October 13, 1998, and returned to Department of Corrections' ("DOC") custody in January of 2006 as a parole violator. (*Id.*).

In this habeas proceeding, petitioner challenges the incentive gain-time he received after his return to prison, arguing that the DOC failed to award him his "full credit of earned gain-time" for the months of April-August of 2006, in violation of the *Ex Post Facto* Clause, the Florida Supreme Court's decision in *Waldrup v. Dugger*, 562 So.2d 687 (Fla. 1990), and the Due Process Clause. (Doc. 1, p. 3). Respondent concedes the petition is timely and that petitioner exhausted his state court remedies with respect to his *ex post facto* claim. He contends, however, that the *ex post facto* claim does not provide a basis for federal habeas relief, and that petitioner's due process claim is procedurally defaulted. (Doc. 14).

## LEGAL STANDARDS

**Section 2254 Standard of Review**

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States. As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19. In relevant part, section 2254(d) now provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

---

[2]Documents in respondent's appendices are referenced by the appendix number followed by the Bates stamp number appearing in the lower right-hand corner of the document.

*Case No: 5:07cv243/RS/MD*

>**(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or**
>
>**(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.**

28 U.S.C.A. § 2254 (2008).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3] The appropriate test was described by Justice O'Connor as follows:

>**In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.**

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); *Ramdass v. Angelone*, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000). In employing this test, the Supreme Court has instructed that, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal

---

[3] Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." *Neelley v. Nagle*, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by Parker v. Head*, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" *Lockyer*, 538 U.S. at 73 (quoting *Williams*, 529 U.S. at 405–06). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting *Williams*, 529 U.S. at 405–06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409. Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it. *Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S.

685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001). The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion." *Williams*, 529 U.S. at 410–12.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see e.g. Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); *Jones v. Walker*, 469 F.3d 1216, 1226-27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied

where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti v. Quarterman*, --- U.S. --- 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); *Jones*, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

**Exhaustion and Procedural Default**

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[4] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)). To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. *Duncan, supra*, 513 U.S. at 365-66; *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Picard*, 404 U.S. at 277-78.

---

[4] Section 2254 provides, in pertinent part:

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

    (A) the applicant has exhausted the remedies available in the courts of the State; or

    (B) (i) there is an absence of available State corrective process; or

       (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

The Supreme Court has offered the following guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In *Picard v. Connor*, *supra*, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," *id.* at 278, 92 S.Ct. at 513, the Court rejected the contention that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is insufficient to make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  In *Anderson v. Harless*, 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982), the habeas petitioner was granted relief on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  *Id.* 459 U.S. at 7, 103 S.Ct. at 278 (citing *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979)).  The only manner in which the habeas petitioner had cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law."  *Anderson*, 459 U.S. at 7, 103 S.Ct. at 278 (internal quotation marks omitted).  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the <u>cited</u> case advanced a federal claim.  Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  459 U.S. at 7 and n. 3, 103 S.Ct. at 278 and n. 3.

**Years later, the Supreme Court readdressed the "fair presentation" requirement in *Duncan v. Henry*, supra. The *Duncan* Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[5] The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court." *Duncan*, 115 S.Ct. at 888. More recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Baldwin v. Reese*, 541 U.S. 27, 124 S.Ct. 1347, 1351, 158 L.Ed.2d 64 (2004). The *Baldwin* Court commented that "a litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Id.* This language, while not part of the Court's holding, provides an instructive and useful rule of thumb. With regard to this statement, the Eleventh Circuit stated in *McNair v. Campbell*, 416 F.3d 1291 (11th Cir. 2005):**

> **If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion. However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'" *McNair* [*v. Campbell*], 315 F. Supp. 2d at 1184 (quoting *Vasquez v. Hillery*, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d**

---

[5]The petitioner in *Duncan* raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal. Presented with a state constitutional claim, the state court applied state law in resolving the appeal.

*Case No: 5:07cv243/RS/MD*

**598 (1986)). This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"**

*Id.,* 416 F.3d at 1302-03 (citations omitted).[6]

The Eleventh Circuit, prior to *Duncan*, had broadly interpreted the "fair presentation" requirement.[7] However, after *Duncan*, the Eleventh Circuit has taken a more restrictive approach. For example, in *Zeigler v. Crosby*, the Circuit Court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the Federal Constitution. 345 F.3d 1300, 1307 (11th Cir. 2003). The court specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words: "Appellant was denied due process and a fair trial. . . .," which could be interpreted as asserting a fair trial claim under the Florida Constitution and Florida's Due Process Clause. *Id.* at 1308 n.5. The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the

---

[6] In his initial brief before the Court of Criminal Appeals, the petitioner cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law." *McNair v. Campbell*, 416 F.3d 1291, 1303 (11th Cir. 2005). The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments. *Id*.

[7] *See, e.g., Watson v. Dugger*, 945 F.2d 367 (11th Cir. 1991) (finding issue to be exhausted when petitioner argued in state court that trial court misapplied state law when it refused to give petitioner's requested jury instruction and thereby allowed the jury to convict without necessary showing of criminal intent, and argued in federal court that this was a due process violation); *Mattox v. Dugger*, 839 F.2d 1523 (11th Cir. 1988) (holding that a federal habeas corpus petition should not be dismissed on grounds of procedural default when a petitioner has previously brought an issue before a state court alleging only state law violations, when such a claim is equally supported by federal law, and the state cites such federal law in support of its position); *Hutchins v. Wainwright*, 715 F.2d 512, 518-19 (11th Cir. 1983) (petitioner exhausted Sixth Amendment confrontation clause claim in state court by raising hearsay objections, even though petitioner never raised Sixth Amendment claim in state court).

United States Constitution and cited no federal cases. The court concluded that petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us." *Id.*

An issue that was not presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, *i.e.*, procedurally barred from federal review. *O'Sullivan*, 526 U.S. at 839-40, 848, 119 S.Ct. at 1734; *Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999). This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *Coleman v. Thompson*, 501 U.S. 722, 734-35 and n. 1, 111 S.Ct. 2546, 2555, 115 L.Ed.2d 640 (1991); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); *Chambers v. Thompson*, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993); *Parker v. Dugger*, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L.Ed.2d 812 (1991). In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. *Bailey*, 172 F.3d at 1303. In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question. *See Harris v. Reed*, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989). The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question. *Lee v. Kemna*, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L.Ed.2d 820 (2002). The adequacy requirement has been interpreted to mean that the rule must be firmly established and regularly followed, that is, not applied in an "arbitrary or unprecedented fashion," *Judd v. Haley*, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner. *Ford v. Georgia*, 498

U.S. 411, 424-25, 111 S.Ct. 850, 858, 112 L.Ed.2d 935 (1991); *Upshaw v. Singletary*, 70 F.3d 576, 579 (11th Cir. 1995).

To overcome a procedural default, the petitioner must show cause and prejudice or a fundamental miscarriage of justice in order for the federal habeas court to reach the merits of a claim. *Tower*, 7 F.3d at 210; *Parker*, 876 F.2d 1470. "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L.Ed.2d 397 (1986)). Lack of counsel or ignorance of available procedures is not enough to establish cause. *Tower v. Phillips, supra.* To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 85, 130 L.Ed.2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." *Schlup*, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

*Id.*

### PETITIONER'S GROUNDS FOR RELIEF

Both of petitioner's claims center on the award of incentive gain-time he received under section 944.275, Florida Statutes. At the time petitioner committed his offense in 1981, Florida law provided that inmates were eligible to receive "work" and "extra" gain-time (also referred to as "incentive" gain-time) under section 944.275(2)(b) and (3)(a), Florida Statutes (1981). Section 944.275(2)(b) provided as follows:

> The department is authorized to grant additional gain-time allowances on a monthly basis, as earned, up to 1 day for each day of productive or institutional labor performed by any prisoner who has committed no infraction of the rules of the department or of the law of this state and who has accomplished, in a satisfactory and acceptable manner, the work, duties, and tasks assigned. Such gain-time allowances under this section shall be awarded on the basis of diligence of the inmate, the quality and quantity of work performed, and the skill required for performance of the work.

Fla. Stat. § 944.275(2)(b) (1981). Section 944.275(3)(a) provided as follows:

> An inmate who faithfully performs the assignments given to him in a conscientious manner over and above that which may normally be expected of him, against whom no disciplinary report has been filed within the preceding 6 months, and whose conduct, personal adjustment, and individual effort towards his own rehabilitation show his desire to be a better than average inmate or who diligently participates in an approved course of academic or vocational study may be granted, on an individual basis, from 1 to 6 days per month extra gain-time to be deducted from the term of his sentence.

Fla. Stat. § 944.275(3)(a) (1981). Under these provisions, the maximum <u>hypothetically possible</u> award of incentive gain-time (i.e., "work" and "extra" gain-time) an inmate could earn was 37 days per month. *Waldrup v. Dugger*, 562 So.2d 689-90 (1990). This calculation was based on a 31-day month. For example, if an inmate worked every day of the month in a 31-day month, he could receive a maximum award of 31 days of "work" gain-time. If the inmate also complied with the requirements for receiving "extra" gain-time, he could receive up to an additional 6 days of "extra" gain-time per month. *Id.*

In 1983, sections 944.275(2)(b) and (3)(a) essentially were repealed. They were replaced with a new statute which provided a maximum of 20 days of incentive gain-time per month for inmates who had engaged in "positive activities" such as training programs or diligent work. Fla. Stat. § 944.275(4)(b); *see also Waldrup*, 562 So.2d at 690 and n. 9.

In the instant case, it is undisputed that petitioner received the following "work" gain-time awards during the relevant period:

4/30/2006  20 days

5/31/2006  22 days

    **6/30/2006  22 days**

    **7/31/2006  20 days**

    **8/31/2006  23 days**

**(Doc. 14, App. 1, pp. 17-18; *see also* Doc. 1, p. 6).  He was awarded no "extra" gain-time during this period.  (*Id.*).**

**Ground 1:  *Ex Post* Facto Violation**

    **Relying on *Waldrup v. Dugger, supra*, which held that prisoners who committed their offenses between July 1, 1978 and June 1983 were entitled to have the DOC apply the pre-1983 basic and incentive gain time statutes, petitioner contends the DOC violated the *Ex Post Facto* Clause when it failed to grant him the maximum number of days of "incentive" gain-time provided under Fla. Stat. 944.275(b)(2) and (3)(a) (1981).  Respondent concedes petitioner exhausted this claim by seeking relief through the institutional grievance process and then filing a petition for writ of mandamus in the Leon County Circuit Court.  (Doc. 14, App. 1, pp. 1-8).  After the circuit court denied relief, (*id.*, pp. 30-32), petitioner sought certiorari review in the Florida First District Court of Appeal ("First DCA").  (*Id.*, pp. 33-46).  The First DCA denied relief.  (Doc. 14, App. 2, p. 79).  Respondent asserts that contrary to petitioner's contention, petitioner's incentive gain-time awards were based on the 1981 "work" gain-time statute, Fla. Stat. § 944.275(2)(b) (1981), and the 1981 "extra" gain-time statute, Fla. Stat. § 944.275(3)(a) (1981).**

    **A.  Clearly Established Federal Law**

    **Article I, § 10 of the United States Constitution prohibits the States from passing any "ex post facto Law."  As the Supreme Court has clearly established: "To fall within the *ex post facto* prohibition, a law must be retrospective – that is, 'it must apply to events occurring before its enactment' – and it 'must disadvantage the offender affected by it,' by altering the definition of criminal conduct or increasing the punishment for the crime."  *Lynce v. Mathis*, 519 U.S. 433, 441, 117 S.Ct. 891, 896, 137 L.Ed.2d 63 (1997) (quoting *Weaver v. Graham*, 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed. 17 (1981) and citing *Collins v. Youngblood*, 497 U.S. 37, 50 110 S.Ct. 2715, 2723, 111 L.Ed.2d 30 (1990)).**

B. **Federal Review of State Court Decision**

The state court rejected petitioner's *ex post facto* claim, explaining:

> Section 944.275(2)(b), Fla. Stat. (1981) authorized the DOC to grant earned gain-time allowances on a monthly basis up to 1 day for each day of productive or institutional labor performed by a prisoner who has committed no infractions and whose work is satisfactory. The statute further provides that "gain-time under this section be awarded <u>only if earned</u> as provided herein." § 944.275(2)(a), Fla. Stat. (1981). The final amount of a monthly award is based upon the inmate's work rating and the number of days worked.
>
> Simply put, petitioner is not entitled to receive incentive work gain-time for days he did not work. Indeed, petitioner has not alleged any facts that would entitle him to mandamus relief in this court. Petitioner was advised clearly by the DOC at the beginning of the administrative grievance process that there were 20 work days available for the month of April 2006 and he was awarded 20 days of gain-time.
>
> I find that the gain-time statute does not authorize the DOC to give "maximum" awards of work gain-time to some inmates with no justification. The DOC may only award work gain-time, if earned, and in an amount of up to 1 day for each day of labor. The amount of any gain-time award is affected by factors such as quality of performance and disciplinary actions.
>
> Petitioner's claims are without merit.

(*Id.,* pp. 31-32).

As outlined above, to establish an *ex post facto* violation the first thing petitioner must show is that the law being applied is retrospective in effect. That he cannot do. The state court found, and the record conclusively establishes, that the DOC applied the 1981 gain-time statute, which is the statute in effect at the time petitioner committed his offense. (*Id.*; Doc. 14, App. 1, pp. 17-18). Petitioner's incentive gain-time awards were <u>not</u> based on retroactive application of the 1983 gain-time statute.

Petitioner's claim appears to be based on the mistaken premise that he is <u>entitled</u> to receive 37 days of incentive gain-time per month regardless of whether he earns it, and that since he did not receive 37 days in a given month, it must be

because the DOC applied the 1983 amendment instead of the pre-1983 formula. Petitioner's speculation is not supported by the evidence. As the state court found, consistent with Fla. Stat. § 944.275(b)(2) (1981), petitioner received 1 day of "work" gain-time for each full day he worked. For example, he received 20 days of "work" gain-time in April of 2006 because he worked 20 full days. (Doc. 14, App. 1, p. 18). He received 22 days of "work" gain-time in May of 2006 because he worked 22 full days, etc. Petitioner does not allege that he worked every day from April 1, 2006-August 31, 2006. Nor does he allege that there were days he worked for which he received the incorrect or no credit. Moreover, the evidence submitted by respondent establishes that petitioner was not awarded "extra" gain-time because he did not participate in any academic, vocational, or self-betterment programs. *See* Fla. Stat. § 944.275(c)(a) (1981). (Doc. 14, App. 1, p. 18). Petitioner does not dispute this fact. He merely complains that during the first two years after his return to DOC custody, he was restricted from participating in such programs. (Doc. 17, p. 3).

The record establishes that although petitioner is correct that he did not receive the largest incentive gain-time award possible under the 1981 statute, it is not because the DOC was retroactively applying the 1983 amended statute. It is because petitioner did not earn the largest possible award under the 1981 version of Fla. Stat. §§ 944.275(b)(2) and (c)(a). The state court's denial of relief on petitioner's *ex post facto* claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. Nor was the state court's denial of relief based on an unreasonable determination of the facts in light of the evidence in the state court record. Petitioner is not entitled to federal habeas relief, and the writ should not issue.

## Ground 2: Due Process Violation

Petitioner also claims that the DOC's calculation of his "work" and "extra" gain-time awards violates the Due Process Clause because the DOC "has failed to award him his full credit of earned gain-time." (Doc. 1, p. 3). Respondent contends petitioner procedurally defaulted his due process claim because he did not present it to the state court in the mandamus and certiorari proceedings (rather, he

presented only his *ex post facto* claim), and he would be procedurally barred from returning to state court to do so. Respondent is correct.

In state court, petitioner presented only one claim – his *ex post facto* claim arising under *Waldrup, supra*, and the *Ex Post Facto* Clause. His pleadings in state court did not mention the Due Process Clause, nor did the cases he cited. (Doc. 14, App. 1, pp. 1-8).[8] Although the circuit court's order denying relief went beyond an *ex post facto* analysis and determined that the DOC correctly applied the 1981 gain-time statute, its analysis was based on its interpretation of state law, not due process principles. Accordingly, the undersigned concludes that petitioner's due process claim is unexhausted. Any further attempt at exhaustion in Florida courts would be futile because petitioner's claim would be procedurally barred under Florida law. *Cf. Johnson v. Singletary*, 647 So.2d 106, 109 (Fla. 1994) (holding that "[s]uccessive habeas corpus petitions seeking the same relief are not permitted nor can new claims be raised in a second petition when the circumstances upon which they are based were known or should have been known at the time the prior petition was filed."). Petitioner has made none of the requisite showings to excuse his default. Therefore, the court should not review the claim.

Moreover, even if the issue were not defaulted, this court could not consider it because it involves purely a question of state law. The true thrust of petitioner's argument is that his interpretation of Florida law is different from that of the DOC and the state courts. How the DOC and the state courts interpret state law is not this court's concern. Federal habeas relief is available to correct only constitutional injury. 28 U.S.C. § 2254(a); *Estelle v. McGuire,* 502 U.S. 62, 67-68, 112 S.Ct. 475, 479-80, 116 L.Ed.2d 385 (1991) (errors that do not infringe upon a defendant's

---

[8]In his reply, petitioner states that he presented his due process claim to the state courts in his traverse filed in the mandamus proceeding (citing to paragraph 8) and in his reply filed in the certiorari proceeding (citing to page 73). The sentence in petitioner's traverse is this: "Its [sic] clearly obvious that the Classification Department at Hollywood C.C.C. was clearly aware of Waldrup v. Dugger Supreme Court Decision, and the (process) in which it was suppose [sic] to be applied to the Plaintiff." (Doc. 14, App. 1, p. 22 ¶ 8). Under existing Supreme Court and Eleventh Circuit precedent, this statement cannot be said to have fairly presented a Federal due process claim concerning the gain-time awards. Nor did petitioner present a Federal due process claim in the certiorari proceeding when he argued that the circuit court "denied due process" when it denied mandamus relief. (Doc. 14, App. 2, p. 73).

constitutional rights provide no basis for federal habeas corpus relief); *Wainwright v. Goode*, 464 U.S. 78, 104 S.Ct. 378, 78 L.Ed.2d 187 (1983); *Barclay v. Florida*, 463 U.S. 939, 958-659, 103 S.Ct. 3418, 3429, 77 L.Ed.2d 1134 (1983) ("Mere errors of state law are not the concern of this court . . . unless they rise for some other reason to the level of a denial of rights protected by the United States Constitution.") (citations omitted); *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 2976, 73 L.Ed.2d 1361 (1981); *Carrizales v. Wainwright*, 699 F.2d 1053 (11th Cir. 1983). Questions of state law and procedure "rarely raise issues of federal constitutional significance. [A] state's interpretation of its own laws provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." *Tejada v. Dugger*, 941 F.2d 1551 (11th Cir. 1991) (quoting *Carrizales, supra*). "This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is couched in terms of equal protection and due process." *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988). In *Branan v. Booth*, for example, the Eleventh Circuit reaffirmed that "in the area of state sentencing guidelines in particular, we consistently have held that federal courts cannot review a state's alleged failure to adhere to its own sentencing procedures." *Id.* at 1508 (citing *Jones v. Estelle*, 622 F.2d 124, 126 (5th Cir.), *cert. denied*, 449 U.S. 996, 101 S.Ct. 537, 66 L.Ed.2d 295 (1980)).

      State law issues may be reviewed in this federal forum only when the alleged errors were "so critical or important to the outcome of the trial to render the entire trial fundamentally unfair." *Tejada v. Dugger*, 941 F.2d at 1560. The Supreme Court "ha[s] defined the category of infractions that violate 'fundamental fairness' very narrowly." *Estelle*, 502 U.S. at 352, 110 S.Ct. 668. The instant case is not one in which there were such critical errors, if indeed there were any errors, that a constitutional violation is apparent.

## CONCLUSION

      Petitioner raises an *ex post facto* violation, but as shown above, there is none. Thus, the state court's denial of relief did not result "in a decision that was contrary

to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d)(1); *Williams, supra*. Petitioner's due process claim is procedurally defaulted and, in any event, without merit.

Accordingly, it is respectfully RECOMMENDED that the petition for writ of habeas corpus (doc. 1) be DENIED, and that the clerk be directed to close the file.

At Pensacola, Florida this 18th day of November, 2008.


/s/ *Miles Davis*
**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636;** ***United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**